UNITED STATES *v.* MEADOWS WYE & Co., INC. (F. A. MACCLUER, INC.) (No. 3036) [1]

---

[1] T. D. 42643.

United States Court of Customs Appeals, March 13, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Oscar Igstaedter*, special attorneys, of counsel)', for the United States.
*B. A. Levett* for appellee.

[Oral argument February 7, 1928, by Mr. Igstaedter and Mr. Levett]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importer entered certain silk handkerchiefs, purchased by F. A. MacCluer (Inc.), of New York, from Sambrook-Witting & Co., of London. These were appraised by the local appraiser at 36 shillings per dozen, less 2½ and 1¼ per centum discount, plus packing. On appeal by the importer the single justice approved and adopted the appraised value. On review by the first division of the Customs Court the judgment of the single justice was reversed, Justice McClelland dissenting, the court finding that the dutiable value of the merchandise was 2 shillings 8½ pence each, less a discount of 2½ and 1¼ per centum, plus packing charges. From that judgment the Government has appealed.

The matters at issue are few. It is conceded, and found by both the single justice and the appellate division, that there is a foreign value of the merchandise in question and that the foreign value should be taken for dutiable purposes. The only question is, what constitutes the foreign value? The court below having found this foreign value to be 2 shillings 8½ pence per handkerchief, that finding must stand if there be any substantial evidence in the record to support it or unless we are prevented by other matters appearing of record from so holding.

When the matter came on to be heard before Justice Howell, the importer was represented by counsel, who also likewise appeared

before the Customs Court and this court. In stating the case of the importer before Justice Howell, before the taking of testimony, importer's counsel said:

The handkerchiefs are special designs, which are confined by the manufacturers to Sambrook-Witting & Co., who in turn sell to the importer.

Again, counsel for the Government stated:

\* \* \* we wish to point out in connection with this affidavit that nobody else, apparently, is able to purchase this merchandise except through Sambrook-Witting & Co. Therefore, they would have to pay their price for that.

In answer to this counsel for importer said:

We concede that.

Nothing appears otherwise in the record to disclose any change in attitude on the part of importer or his counsel in this respect, and the case was tried on that theory before Justice Howell and the Customs Court. In his argument here counsel seeks to avoid the effect of these concessions by stating that they were erroneous and so proven by the testimony. But we do not believe, under the circumstances of this case, that the importer may try his case in this court upon a different theory than that advanced by him in the court below. Having made, through its counsel, the stipulations above referred to, the importer should not have been heard, thereafter, to urge the existence of a state of facts contrary to such stipulation. To hold otherwise would be to lead the trial court into error and to then take advantage of such error upon appeal. Such stipulations should be held to be binding and conclusive. *Stubbs* v. *United States,* 7 Ct. Cust Appls. 399, T. D. 36967; *United States* v. *Zucca & Co.,* 11 Ct. Cust. Appls. 167, T. D. 38959; *Wheeler, Elder & Elder* v. *United States,* 11 Ct. Cust. Appls. 110, T. D. 38752; *United States* v. *Wiener,* 15 Ct. Cust. Appls. 428, T. D. 42594.

Assuming, therefore, the facts to be as stipulated, it appears that the English manufacturers made certain designs of handkerchiefs, of which those imported and in question here are a part, and which were made for and sold only by Sambrook-Witting & Co. It is shown by the record, without contradiction, that such special designs were sold by Sambrook-Witting & Co., in England, for not less than 36 shillings per dozen. It is shown by the record, and not controverted by the Government, that *similar* handkerchiefs were sold by the manufacturers in the English home markets, in the usual wholesale quantities, for 2 shillings 8½ pence each, less a discount of 2½ and 1¼ per centum and plus packing. But one question then remains: Shall the price charged by Sambrook-Witting & Co. for these special handkerchiefs in England be taken as the dutiable value, or shall the price charged by the manufacturers for similar handkerchiefs be taken?

Foreign value, as defined by section 402 (b), Tariff Act of 1922, is as follows:

Sec. 402. (b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Here the language is "such or similar merchandise." On the part of the Government it is contended that if the identical, or *such,* merchandise is freely offered for sale, at the time of exportation, to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, then the selling price of *such* merchandise must be taken to find foreign value; on the other hand the importer contends that the words "such" and "similar" are synonymous and that the selling price of either may be taken. We can not agree with the importer in this proposition. Obviously it was the intent of the lawmakers to fix foreign value upon, first, the wholesale selling price of *the same* merchandise abroad, and, in case there be no such merchandise so sold, then to fix dutiable value by the wholesale selling price of *similar* merchandise, and we so construe the statute.

The case at bar illustrates one probable purpose of the language of the act in question. The English jobbers, Sambrook-Witting & Co., controlling and having the exclusive sales of certain designs of handkerchiefs, because of this exclusive control may demand and receive, as they do, largely increased prices over those charged by the manufacturer for other goods not so exclusively handled. Reason would hardly seem to dictate that those who buy such special merchandise and pay the higher price so made necessary should be permitted to avail themselves of the selling value of lower priced goods for the purpose of fixing the dutiable value of their imports.

We are, therefore, of opinion that there is no substantial evidence in the record in support of the judgment of the court below, and that the Customs Court erred in reversing the judgment of the single justice.

The judgment of the court below is, therefore, *reversed.*