GENERAL FOODS CORPORATION ET AL. *v.* UNITED STATES

No. 7663.—Pro forma invoice dated Coburg, Canada, March 24, 1947, etc.
Entered at Cincinnati, Ohio, April 9, 1947; Cleveland, Ohio, April 9, 1947; New York, N. Y., April 9, 1947, etc.; Chicago, Ill., April 8, 1947.
Entry Nos. 747; 1193; 784819, etc.; 7134.

(Decided February 10, 1949)

*Lester E. Waterbury* (*Arthur D. Wingebach* of counsel) for the plaintiffs.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

MOLLISON, Judge: The six appeals for reappraisement listed in schedule "A", attached to and made a part hereof, were consolidated for the purpose of trial, and involve the value of concentrated fruit pectin in 5-gallon tins exported from Canada during March and April 1947. The six appeals cover a total of 6,630 cases, each case containing one tin, each tin containing 43½ pounds.

The merchandise was originally entered at the invoiced value of U. S. $2.50 per case, but subsequently each entry was amended to a value of Can. $4.375 per case, net, packed, which value was adopted by the appraiser upon appraisement. The plaintiffs claim that the proper value of the merchandise was Can. $2.93 per case, net, packed, for the merchandise exported in March 1947, and Can. $2.90 per case, net, packed, for the merchandise exported in April 1947.

Both sides are in agreement that the proper basis of value of the merchandise is foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938 (52 Stat. 1081), which section, as amended, is quoted in the margin,[1] it appearing that at the time of the exportations here involved such or similar merchandise was freely offered for sale for home consumption in Canada within the requirements of the statute, but that it was not freely offered for sale for exportation therefrom.

It appears from the evidence that at the time of exportation of the merchandise here involved, concentrated fruit pectin was freely offered for sale in Canada packed in two ways, viz, in 5-gallon tins holding 43½ pounds each, and in birch barrels holding 510 pounds each. It likewise appears that the composition of the concentrated fruit pectin so offered was the same in each case, save that that packed in barrels contained a preservative, while that packed in 5-gallon tins did not, with the result that the pectin contained in the tins had to be used immediately upon opening, or it would spoil, while decomposition would be delayed in the case of the pectin with the added preservative contained in the barrels.

It is the plaintiffs' contention herein that notwithstanding the addition of the preservative to the pectin contained in the barrels, it was,

---

[1] (c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

within the meaning of the term as used in the statute, *supra*, "such" merchandise as the pectin contained in the tins, both as imported and as sold for home consumption in Canada. Further, it is the plaintiffs' contention that the major portion of sales of concentrated fruit pectin in Canada at the time of exportation of the merchandise here involved was in barrels—specifically, in lots of 10 or more barrels—and that the pectin at bar should be valued for duty purposes at the pound price of pectin so offered, less the costs of the barrel packing, plus the costs of the packing in tins.

The defendant, on the other hand, makes two contentions: First, that the plaintiffs have failed to establish that the pectin offered for sale in barrels in Canada, which contained a preservative, was "such" merchandise, within the meaning of that term as used in the statute, as the imported pectin without the preservative. Further in this connection it is contended that the merchandise offered for sale in tins in Canada was identical with, or "such" as, the merchandise contained in the imported tins, while at most the merchandise offered for sale in barrels in Canada, since it contained a preservative, was only similar thereto, and under the well-settled rule where values exist for both such and similar merchandise the value for such merchandise establishes the statutory value rather than the value for similar merchandise. *United States* v. *Meadows Wye & Co., Inc.*, 15 Ct. Cust. Appls. 451, T. D. 42643, cited.

Alternatively, the defendant contends that even if the pectin contained in the barrels offered for sale in Canada be considered to have been "such" pectin as that contained in the tins, nevertheless, the barreled pectin, which was sold by the *pound*, was a separate commercial article from the tinned pectin, which was sold by the *crate* of two tins.

With respect to the first point at issue, namely, the identity or similarity of the pectin containing the preservative and the pectin without the preservative, the record is very meager. For the plaintiffs there was offered and received in evidence as exhibit 1 the affidavit of Richard T. Mohan, president and managing director of the exporting corporation, sworn to before a notary public on December 17, 1947. In paragraph (4) thereof, Mr. Mohan makes the following statement:

(4) Composition of the concentrated fruit pectin sold in barrels differs from the concentrated fruit pectin packed in five-gallon cans only in that the concentrated fruit pectin packed in barrels contains a preservative.

I do not regard the foregoing statement with respect to the composition of the pectin as offered in barrels and in tins as establishing the identity for valuation purposes of the barreled pectin with the tinned pectin. It may very well be, for all the record shows directly or indirectly, that the addition of the preservative to the barreled pectin

resulted in an enhancement of the value of the pectin, or it may have resulted in a diminution of such value, or it may have left the value unaffected. The fact is, there is no evidence on the point.

I am of the opinion, however, that decision in these cases need not turn on that point alone. As part of the affidavit, exhibit 1, plaintiffs have submitted a rather complete exposition of packing costs and selling prices during the period here in question. Certain interesting results are reached from an examination of these figures.

Taking the plaintiffs' claimed figure of Can. $0.07 per pound as the price at which barreled pectin was freely offered for sale, packed, during the month of March 1947, it appears that Can. $0.0218 of that figure represented the costs to the manufacturer of packing in barrels, leaving Can. $0.0482 per pound as what is termed by the affiant Mohan as the "Market value of pectin exclusive of packing costs" in March 1947. (Plaintiffs' exhibit 1, page 7.)

In Mr. Mohan's affidavit, exhibit 1, sufficient data are given with which a similar calculation can be performed with respect to the pectin offered for sale in Canada packed in tins during March 1947. Thus, it appears that Can. $4.375 per tin was the price at which tinned pectin was freely offered for sale in March 1947 (exhibit "B" of plaintiffs' exhibit 1), and that Can. $1.003 of that figure represented costs to the manufacturer of packing in tins (plaintiffs' exhibit 1, page 6), leaving Can. $3.372 as the "market value of pectin exclusive of packing costs" of the 43½ pounds contained in each tin.[2]

When $3.372 is divided by 43½ in order to arrive at the pound price, a figure of Can. $0.0775 is arrived at. Thus, using plaintiffs' own figures, the pectin *per se* contained in the barrels had a market value or price of Can. $0.0482 per pound while that in the tins had a market value or price of Can. $0.0775.

Similar results are arrived at upon calculations involving the packing costs and selling prices in effect in April 1947.

If, as the plaintiffs contend, notwithstanding the foregoing, the pectin in barrels and in tins was identical in value, i. e., at Can. $0.0482 per pound, then the only explanation for the higher *packed* price of the tinned pectin as compared with the barreled pectin is that it resulted from a greater cost *to the purchaser* of the packing in tins. It will be noted that the figures for packing costs given above and taken from exhibit 1 represent the costs *to the manufacturer or seller*.

Section 402 (c), *supra*, defining foreign value, contemplates a market value or price—

---

[2] In the figures given in the affidavit, exhibit 1, there is a deduction from the $1.003 figure of $0.1708 for drawback (presumably Canadian). Drawback, however, would not be paid until the goods on which it was claimed had been exported from Canada. Since we are here concerned with foreign value, i. e., the market value or price at which such or similar goods were offered for sale for home consumption *in Canada*, the drawback forms no part of the calculation.

\* \* \* including the cost of all containers and coverings of whatever nature \* \* \*.

It is obvious that since the market value or price includes the cost of containers and coverings, the cost of the latter intended by the statute to be included is the cost *to the purchaser*. Put another way, where goods are offered in the foreign market in a packed condition, the price includes the cost of the packing as offered.

Thus, in the cases at bar, if the market value of the pectin *per se* was the same whether packed in tins or in barrels, then it is clear from the figures submitted that the tinned pectin was being offered at a price which included a profit to the manufacturer or seller on the cost to it of the packing in tins. On the other hand, if the offered price of the tinned pectin included only the actual cost to the manufacturer or seller of the packing in tins, then the market price of the pectin contained therein was higher than that contained in barrels. In either case, it is clear that the value to be applied to the tinned pectin at bar is the market value or price of the tinned pectin in Canada. That price represents the value of merchandise identical with the imported merchandise, both with respect to the merchandise *per se* and the packing, and, as has been stated, the statute contemplates a value which includes the merchandise *per se* and the packing when offered in packed condition.

From the evidence offered it is manifest that the only price which reflects the requirements of the statute is the freely offered price in Canada of pectin in tins, i. e., the entered and appraised value of Can. \$4.375 per case, net, packed.

Upon a full consideration of the entire record I find that foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, is the proper basis for the determination of the value of the merchandise here involved, and that such value in each case is the appraised value.

Judgment will issue accordingly.